IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF IOWA
CENTRAL DIVISION

| | | |
|---|---|---|
| DES MOINES MIDWIFE COLLECTIVE, and CAITLIN HAINLEY,<br><br>Plaintiffs,<br><br>v.<br><br>IOWA HEALTH FACILITIES COUNCIL, HAROLD MILLER, AARON DEJONG, KELLY BLACKFORD, and BRENDA PERRIN,<br><br>Defendants. | ) | Case No. 4:23-cv-00067-SMR-HCA<br><br>ORDER ON DEFENDANTS' MOTION TO DISMISS |

Before the Court is a Motion to Dismiss filed by Defendants Iowa Health Facilities Council (the "Council"), Harold Miller, Aaron DeJong, Kelly Blackford, and Brenda Perrin (collectively, "Defendants").[1] [ECF No. 3-1]. Defendants move to dismiss a Complaint filed in state court, and removed to this Court, alleging that their enforcement of Iowa's Certificate of Need ("CON") framework violates the United States Constitution and Iowa Constitution. Plaintiffs in this case are Des Moines Midwife Collective (the "Collective") and Caitlin Hainley (collectively, "Plaintiffs").

Defendants assert that the Complaint fails to state a claim upon which relief can be granted. Plaintiffs resist the Motion. Although the Court holds that Plaintiffs' claims do not implicate a fundamental right under the Due Process Clause, it concludes that the allegations in the Complaint

[1] The Council is a body located within the Department of Inspections, Appeals, and Licensing ("Department") and is composed of five members appointed by the Governor. There are currently only four members on the Council—the aforementioned individual Defendants.

are sufficient to proceed under rational basis review on equal protection and substantive due process grounds. Accordingly, Defendants' Motion to Dismiss is GRANTED in part and DENIED in part. [ECF No. 3].

## I. BACKGROUND

The individual Plaintiff is a midwife who wishes to open a "birth center" to conduct her midwife practice in a dedicated, outside the home location. *Id.* ¶ 23. She alleges in the Complaint that Iowa regulations prohibit her from obtaining her desired facility.

### *A. Statutory Background*

Under Iowa law, a birth center such as the one sought by Plaintiffs, is subject to the CON requirement. The process for obtaining a CON in Iowa is set forth in a detailed statutory scheme. When a sponsor proposes a new institutional health service, it must submit a letter of intent to the Department outlining the project. Iowa Code § 10A.715(1). After 30 days, the sponsor may file a CON application outlining information about the project, its need, and its financial feasibility. *Id.* § 10A.716(1)–(2). Once the Department accepts the application, a formal review process begins which entails notifying all affected parties of the potential project and advises them of their right to comment. *Id.* § 10A.716(2). The applicant must also submit an application fee in the amount of three-tenths of one percent of the anticipated cost of the project, up to a maximum of $21,000. Iowa Admin. Code r. 641-202.4.

A public hearing is then held, where the applicant and any affected parties can provide testimony. Iowa Code § 10A.716(3)–(4). The Council will evaluate the application according to the standards set forth in the statute, on the basis of eighteen criteria that mainly focus on the need for the proposed project. *Id.* § 10A.714(1)(a)–(r). The Council must make a written finding that each of four mandatory criteria has been met before granting a CON:

> a. Less costly, more efficient, or more appropriate alternatives to the proposed institutional health service are not available and the development of such alternatives is not practicable;
>
> b. Any existing facilities providing institutional health services similar to those proposed are being used in an appropriate and efficient manner;
>
> c. In the case of new construction, alternatives including but not limited to modernization or sharing arrangements have been considered and have been implemented to the maximum extent practicable;
>
> d. Patients will experience serious problems in obtaining care of the type which will be furnished by the proposed new institutional health service or changed institutional health service, in the absence of that proposed new service.

*Id*. § 10A.714(2).

After the public hearing, the Council will either approve or deny the application and issue a written decision that includes the basis for the decision, its findings of fact, and conclusions. *Id.* § 10A.719. A rehearing or judicial review of the Council's decision is available to the applicant and any affected party. *Id*. § 10A.720; Iowa Admin. Code r. 641—202.9.

### *B. Birth Centers and Plaintiffs' Allegations*

#### 1. Birth Centers

A birth center is a specialized healthcare facility that is distinct from ambulatory surgical centers or hospitals, primarily intended for planned deliveries following a normal, uncomplicated, and low-risk pregnancy. Iowa Code § 10A.711(3). These centers are institutional health facilities and require a CON. *Id*. § 10A.711(13)(f).

The Complaint describes birth centers as an increasingly popular choice for women with low-risk pregnancies which are typically staffed by midwives and provide a wide range of pregnancy care including pre-pregnancy, pregnancy, and postpartum. [ECF No. 1-2 ¶ 30].

According to Plaintiffs, the reasons expectant parents choose birth centers rather than a hospital include lower costs, fewer unnecessary medical interventions, a home-like atmosphere, less contact with sick individuals, and compatibility with personal or religious values. *Id*. ¶ 30.

Plaintiffs point to statistics which illustrate the safety of using birth centers for childbirth. *Id*. ¶ 31. According to Plaintiffs, birth centers also reduce the pressure on hospital maternity wards and alleviate financial costs on parents and the healthcare system as a whole. *Id*. ¶ 33.

2. Plaintiff's Allegations

Hainley is a certified nurse midwife who attends home births and wishes to open a birth center in Iowa. [ECF No. 1-2 ¶¶ 10, 22]. Plaintiff Des Moines Midwife Collective is a partnership that offers midwifery services to Iowans. *Id*. ¶ 17. Plaintiffs explain in their Complaint that they have identified potential locations for their center, they have concrete plans, but they have not yet finalized any arrangements. *Id*. ¶ 24. Such a location would likely involve conversion of a single-family home. *Id*. There is no allegation that Plaintiffs have applied for a CON or that their application has been denied.

Plaintiffs allege that the Council has not approved a CON application for a birth center for years. *Id*. ¶ 44. They further contend that there are currently no operational birth centers in Iowa, and available information supports this claim. *Id*. They insist they have all the necessary professional training, specialized equipment, and contacts necessary to open and operate a birth center—the only remaining obstacle according to Plaintiffs is the burdensome and costly CON process, without which they would have already opened a birth center. *Id*. ¶¶ 25–26.

## II. DISCUSSION

### *A. Motion to Dismiss Standard*

A complaint is subject to dismissal when it "fail[s] to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). "To survive a motion to dismiss, a complaint must contain sufficient factual matter . . . to 'state a claim to relief that is plausible on its face.'" *Rydholm v. Equifax Info. Servs. LLC*, 44 F.4th 1105, 1108 (8th Cir. 2022) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).

"Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). Courts are not required to "accept as true a legal conclusion couched as a factual allegation." *Papasan v. Allain*, 478 U.S. 265, 286 (1986). "While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." *Iqbal*, 556 U.S. at 679. "A pleading that offers labels and conclusions or a formulaic recitation of the elements of a cause of action will not do." *United States ex rel. Ambrosecchia v. Paddock Lab'ys, LLC*, 855 F.3d 949, 955 (8th Cir. 2017) (citation omitted). A court "must accept the allegations contained in the complaint as true and all reasonable inferences from the complaint must be drawn in favor of the nonmoving party." *Young v. City of St. Charles*, 244 F.3d 623, 627 (8th Cir. 2001) (citing *Hafley v. Lohman*, 90 F.2d 264, 266 (8th Cir. 1996)).

### *B. Analysis*

Plaintiffs filed a six-count complaint seeking an injunction declaring that Iowa's CON program is unconstitutional insofar as it requires a CON for birth centers. The Complaint alleges that the CON program violates the Fourteenth Amendment in three ways: (1) their fundamental right to choose the place and manner of giving birth; (2) their fundamental right to earn a living;

and (3) their right to enter into a common occupation. [ECF No. 1-2 ¶¶ 65–76]. Plaintiffs also bring equal protection challenges to the law, claiming that the CON program make arbitrary classifications by treating birth centers differently than home births and existing facilities. The Complaint advances a claim that the CON requirement amounts to an arbitrary "competitor's veto" that discriminates against them and irrationally interferes with their constitutional right to enter into a common occupation protected by the Privileges or Immunities Clause. They further assert that the program is violation of their rights under the Inalienable Rights clause of the Iowa Constitution.

1. Level of Scrutiny

The first consideration for Plaintiffs' constitutional challenge under the Fourteenth Amendment is what level of scrutiny should apply. If a challenged law "burdens a fundamental right, targets a suspect class, or has a disparate impact on a protected class and was motivated by a discriminatory intent," courts apply heightened scrutiny. *New Doe Child #1 v. United States*, 901 F.3d 1015, 1027 (8th Cir. 2018). "But if 'no suspect classification is involved . . . the State need only show that the differential treatment is rationally related to a legitimate state interest.'" *Stevenson v. Blytheville Sch. Dist. #5*, 800 F.3d 955, 970 (8th Cir. 2015) (quoting *Exec. Air Taxi Corp. v. City of Bismarck, N.D.*, 518 F.3d 562, 566 (8th Cir. 2008)). Despite the distinction between the Equal Protection Clause and the Due Process Clause of the Fourteenth Amendment, if rational basis can satisfy equal protection scrutiny, it will also pass substantive due process analysis. *Exec. Air Taxi Corp.*, 518 F.3d at 569.

2. Due Process Claims

a. Due Process

The Due Process Clause of the Fourteenth Amendment provides that no state shall "deprive any person of life, liberty, or property, without due process of law." U.S. Const. amend. XIV, § 1. Substantive due process "protects individual liberty against certain government actions regardless of the fairness of the procedures used to implement them." *Norris v. Engles*, 494 F.3d 634, 637 (8th Cir. 2007) (citation omitted).

i. Fundamental Right

Plaintiffs argue that Iowa's CON program on birth centers violates their fundamental rights under the Fourteenth Amendment. The Complaint sets forth multiple fundamental rights which they contend are violated by Iowa's CON program. In their resistance to the Motion to Dismiss, however, Plaintiffs only assert a fundamental right to choosing the place and manner of giving birth.[2]

Fundamental rights are rights guaranteed by the United States Constitution. *Washington v. Glucksberg*, 521 U.S. 702, 720–21 (1997). The Supreme Court has laid out a two-part test to determine whether an asserted right is fundamental. First, a court must specifically and carefully describe the activity at issue. *Id*. at 721–22. Second, the right must be "deeply rooted in this

[2] In their Resistance to Defendants' Motion to Dismiss, Plaintiffs acknowledge that case law does not strongly support their claims for a fundamental right to earn a living and the right to enter a common occupation under the Privileges or Immunities Clause. [ECF No. 11 at 7]. First, courts have traditionally applied rational basis review to the right to earn a living—indicating it is not a fundamental right. *See Tiwari v. Friedlander*, 26 F.4th 355, 361 (6th Cir. 2022). Second, Plaintiffs concede that their argument concerning the right to enter a common occupation is foreclosed by the Supreme Court's decision in the *Slaughter-House Cases*, 83 U.S. 36 (1872). Plaintiffs explain they wish to preserve these arguments for appellate review. The Court will reject the argument pertaining to a right of common occupation pursuant to the *Slaughter-House Cases* and will consider the right to earn a living under rational basis review as incorporated into its analysis below.

Nation's history and tradition, and implicit in the concept of ordered liberty, such that neither liberty nor justice would exist if they were sacrificed." *Id*. (cleaned up) (citations omitted). Because the recognition of a fundamental right removes it from the arena of public debate and legislative prerogative, courts must use the "utmost care . . . lest the [rights] protected by [due process] be subtly transformed into the policy preferences" of judges. *Id.* at 720.

Plaintiffs contend that they plausibly allege, based on this historical evidence, that expectant mothers have a fundamental right protected by the United States Constitution to choose the place and manner of giving birth. [ECF No. 1-2 ¶ 48]. Characterizing *Birchansky* as rejecting a "narrow" right, Plaintiffs urge that they assert a right that is "about expectant mothers' right with a direct connection to procreation, family, and intimacy." [ECF No. 11 at 9]. This right, according to Plaintiffs, is deeply rooted in the nation's history and tradition and should be recognized as a fundamental right. *Id*. Plaintiffs marshal evidence dating back to the colonial period, prior to the enactment of the Bill of Rights, in support of their position. They point to evidence that most births occurred outside of a hospital with the assistance of a midwife and was subject to little regulation in the 18th century. [ECF No. 11 at 7–8] (citing Richard Wertz & Dorothy C. Wertz, *Lying-In, A History of Childbirth in America* 260 (1989) ("Wertz & Wertz"); Judy B. Litoff, *American Midwives* 146–47 (1978)). Even as recently as 1900, "at least half of all births in the United States were midwife-assisted births outside of a hospital." [ECF No. 11 at 8] (citing Wertz & Wertz). At that time, fewer than 5% of women gave birth in a hospital. *Id*. Plaintiffs also highlight the increasing popularity of births outside of a hospital. *Id*.

They acknowledge that the Supreme Court has not considered whether the right to choose the place and manner of giving birth is a fundamental right, but maintain that such a right is consistent with other unenumerated fundamental rights including the right to marriage,

procreation, intimate relations, and child rearing. [ECF No. 11 at 9]. The recognition of those rights establish that substantive due process protects an intimate relationship between parents and child and "[i]t is difficult to imagine a more intimate moment in a family's life than childbirth." *Id*. at 10. Therefore, the right is entitled to the highest degree of constitutional protection, in Plaintiffs' view. Their position—that the right to choose the place and manner of giving birth is fundamental has been considered and rejected by federal and state courts.

The plaintiff in *Leigh v. Bd. of Registration in Nursing*, 506 N.E.2d 91, 93 (Mass. 1987) raised a similar argument as do Plaintiffs here. The issue in *Leigh* pertained to a registered nurse who practiced as a midwife but was not appropriately licensed as a nurse midwife as required by state law. *Id*. at 92. The plaintiff challenged the suspension of her nursing license, in part, as a violation of her patient's substantive due process rights. Analogizing to other fundamental privacy rights, such as contraception and procreation, the plaintiff asserted that women have a fundamental constitutional right to choose the location and attendance of their child's birth. *Id*. at 93. The Massachusetts Supreme Court rejected the claim, concluding that the statute did not interfere with any fundamental right because it did not require women to give birth in a hospital or receive any medical treatment at all. *Id*. at 94.

The Supreme Court of California similarly rejected a challenge to a midwife licensing regime on the basis that the right to privacy protected by the Due Process Clause and recognized by the Supreme Court does not protect "a woman's choice of the manner and circumstances in which her baby is born." *Bowland v. Mun. Ct.*, 556 P.2d 1081, 1089 (Cal. 1976). In Maryland, the courts have found that a state statute regulating the practice of midwifery does not impinge on a fundamental right under the United States Constitution. *Hunter v. State*, 676 A.2d 968, 975 (Md. 1996) (concluding "there is no fundamental right at issue here" because the statute regulating

midwifery "does not foreclose on a parent's right to engage the services of a midwife or on her right to give birth at home."); *see also People v. Rosburg*, 805 P.2d 432, 437 (Colo. 1991) (observing that "the right of privacy encompasses some personal choices related to procreation, it does not include the personal choice of whether to utilize a lay midwife to assist in childbirth."); *Sammon v. N.J. Bd. of Med. Exam'rs*, 66 F.3d 639, 644–45 (3d Cir. 1995) (holding that the interest "in practicing midwifery and the interest of the parents in selecting a midwife of their choice" are not fundamental rights).

Another consideration militating against Plaintiffs' claim is the Supreme Court's unmistakable resistance to further expansion of substantive due process and recognition of unenumerated rights. Plaintiffs' argument relies on cases in which the unsuccessful challengers invoked a right to privacy based in part on *Roe v. Wade* and its progeny. *See Sammon*, 66 F.3d at 644; *Rosburg*, 805 P.2d at 437; *Hunter*, 676 A.2d at 976; *Bowland*, 556 P.2d at 1089; *Leigh*, 481 N.E.2d at 1354. The Supreme Court has since held that those cases were "wrongly decided" and the right to abortion is not a fundamental right protected by the Fourteenth Amendment, significantly undermining any fundamental right claim grounded in *Roe*. *Dobbs v. Jackson Women's Health Org*., 142 S. Ct. 2228, 2244 (2022).[3]

Iowa's CON program does not burden Plaintiffs' fundamental rights. Any classifications the program draws is not based on a suspect classification. Accordingly, rational basis review will be applied to the CON program, under which the State need only show that any differential treatment is rationally related to a legitimate state interest. *Vacco v. Quill,* 521 U.S. 793, 799 (1997).

[3] To avoid future litigation if *Dobbs* is ultimately overturned, the Court notes that even in *Dobbs's* absence, the Court's ruling in this matter would be the same.

3. Equal Protection Claims

Plaintiffs argue that the CON program makes several classifications which are arbitrary and not rationally related to any legitimate purpose. [ECF No. 1-2 ¶ 56]. Invoking what they describe as a "competitor's veto," Plaintiffs allege that the CON program draws a distinction between childbirth service providers that may operate and those that may not. *Id.* ¶ 57. Such a distinction is not related to the provider's qualifications or fitness but depends solely on obtaining the consent of an economic competitor. *Id.* ¶ 58. Another distinction is that the CON program differentiates between birth centers and home births. Home births are not subject to the CON program. *Id.* ¶ 59. The CON program also permits hospitals to provide obstetrical services up to $1.5 million without necessitating a CON. *Id* ¶ 60.

a. Equal Protection

"The Equal Protection Clause . . . commands that no state shall 'deny to any person within its jurisdiction the equal protection of the laws,' which is essentially a direction that all persons similarly situated should be treated alike." *Stevenson*, 800 F.3d at 970 (quoting *City of Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432, 439 (1985)). The first step when considering an equal-protection challenge is determining whether the plaintiff has demonstrated that he was treated differently than similarly situated people. *Adam & Eve Jonesboro, LLC v. Perrin*, 933 F.3d 951, 959 (8th Cir. 2019).

b. Equal Protection Analysis

Plaintiffs urge that, if the Court determines that there is no fundamental right at issue, they should be permitted to introduce evidence that Iowa's CON program are irrational and do not serve a legitimate state interest. At the motion to dismiss stage, Plaintiffs need only to plausibly allege that the challenged laws are not rationally related to a legitimate state interest. If the Complaint

does that, they survive a Rule 12(b)(6) motion. Plaintiffs insist that the Complaint alleges sufficient facts to establish that the need requirement in the CON program is not a rational means to achieve any legitimate governmental interest because it is unrelated to the applicant's fitness to perform and health and safety concerns are satisfied by other provisions of state and federal law. [ECF No. 11 at 14]. Plaintiffs also reject Defendants' assertions that the CON program reduces health care costs, ensures access to health care, and ensures health care quality. They point to allegations in the Complaint which "specifically allege that the need requirement has nothing to do with a free-standing birth center's qualifications to operate." *Id*. (citing [ECF No. 1-2 ¶¶ 2, 41–42, 53]. Plaintiffs accuse Defendants of "ignoring" their allegations that the CON program is simply a competitor's veto which must be taken as true for purposes of a motion to dismiss. *Id*. at 14–15.

They further maintain that the CON program, on its face, "bears no connection to the government's stated goals." *Id*. at 15. This is because the CON program looks only to the efficient use of the existing facilities which, Plaintiffs contend, has nothing to do with health, safety, or cost-efficiency. Plaintiffs reject the application of *Birchansky* to their allegations because that case pertained to an outpatient eye surgery facility where the Eighth Circuit concluded that the surgeries the plaintiff sought to perform were "highly profitable" so "protecting hospitals from competition in profitable areas of practice promotes full-service hospital viability." 955 F.3d at 757. Here, there is no comparable evidence in the record about birth centers, so Plaintiffs urge that dismissal is improper even under rational basis review.

Plaintiffs further argue that the classifications made by the CON program—between birth centers and in-home midwife services as well as birth centers and existing providers—are irrational. They point out that they are currently permitted to provide home birth services to

women but, if they were to establish a facility to do the same, they must satisfy the CON program requirements. [ECF No. 11 at 17]. Plaintiffs maintain that Defendants do not offer a rational justification for such a distinction and none exists. Allowing midwives to attend births at a woman's home but not at a dedicated facility does not improve costs, access, or quality of care, according to Plaintiffs. *Id*. Additionally, Plaintiffs assert that if Defendants do have a legitimate interest in "full-service hospital" viability, there is no rational explanation for the difference in treatment of existing providers and birth centers under CON because birth centers are vastly different than hospitals, unlike the outpatient eye surgery services and the hospital functions at issue in *Birchansky*. *Id*. at 18.

Taking Plaintiffs' allegations as true, the Court agrees that they have asserted a plausible claim for relief under a rational basis theory for their equal protection and substantive due process claims. At a minimum, the rational basis test would apply to Plaintiffs' state constitutional claims, therefore they survive Defendants' Motion to Dismiss as well.[4] However, Plaintiffs cannot establish a claim alleging a violation under the privileges and immunities clause of the Fourteenth Amendment.

## III. CONCLUSION

Defendants' Motion to Dismiss is GRANTED in part and DENIED in part. [ECF No. 3].

IT IS SO ORDERED.

Dated this 29th day of May, 2024.

---

[4] "[C]hallenges under the inalienable rights clause to regulatory statutes must be adjudicated under the highly deferential rational basis test." *Garrison v. New Fashion Pork LLP*, 977 N.W.2d 67, 81 (Iowa 2022). "'In most cases,' we apply the 'very deferential' rational basis test" for claims asserting an equal protection violation. *Planned Parenthood of the Heartland, Inc. v. Reynolds,* 962 N.W.2d 37, 47 (Iowa 2021) (quoting *Varnum v. Brien*, 763 N.W.2d 862, 879 (Iowa 2009)).

STEPHANIE M. ROSE, CHIEF JUDGE
UNITED STATES DISTRICT COURT