IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF IOWA
CENTRAL DIVISION

| | | |
|---|---|---|
| DES MOINES MIDWIFE COLLECTIVE, LLC, and CAITLIN HAINLEY, | ) ) ) | Case No. 4:23-cv-00067-SMR-HCA |
| Plaintiffs, | ) ) ) | ORDER ON CROSS MOTIONS FOR SUMMARY JUDGMENT |
| v. | ) ) | |
| IOWA HEALTH FACILITIES COUNCIL, AARON DEJONG, KELLY BLACKFORD, JEREMY KIDD, ARNOLD DELBRIDGE and MASAMI KNOX , | ) ) ) ) ) ) | |
| Defendants. | ) ) | |

Before the Court are cross Motions for Summary Judgment filed by both parties in the case. [ECF Nos. 49, 51]. Plaintiffs Des Moines Midwife Collective, LLC and Caitlin Hainley ("Plaintiffs") move for judgment as a matter of law, asserting that enforcement of Iowa's Certificate of Need ("CON") framework violates both the United States Constitution and Iowa Constitution because it cannot survive rational basis review.

Defendants Iowa Health Facilities Council (the "Council"), Aaron DeJong, Kelly Blackford, Jeremy Kidd, Arnold Delbridge, and Masami Knox (collectively, "Defendants")[1] move

---

[1] The Council is a body located within the Department of Inspections, Appeals, and Licensing ("Department") and is composed of five members appointed by the Governor. The individual Defendants are members of the Council. Because they are all sued in their official capacity, they are automatically substituted as parties pursuant to the Federal Rules of Civil Procedure. *See* Fed. R. Civ. P. 25(d).

for summary judgment arguing that Plaintiffs' claims fail as a matter of law because the program is rationally related to a legitimate government interest.   [ECF No. 3-1].

Each party resists the opposing motion for summary judgment.   For the reasons discussed below, the Court finds that summary judgment is proper for Defendants.   The Iowa CON framework survives rational basis review and as such does not violate due process or equal protection.   Accordingly, Plaintiffs' Motion for Summary Judgment is DENIED and Defendants' Motion for Summary Judgment is GRANTED.   [ECF Nos. 49, 51].

## I.        BACKGROUND

### A.  Factual Background

Plaintiff Hainley is a midwife who operates Des Moines Midwife Collective LLC ("DMC"), which is a clinic that provides contraceptive, prenatal, lactation, and home-birth maternity services to clients.   [ECF 49-2 ¶3–5].   Plaintiffs wish to open a freestanding "birth center" to provide midwife services outside of the home or a hospital.   *Id*. at ¶ 8.   They contend that they would provide childbirth services at the birth center primarily for planned child deliveries after normal, uncomplicated, low-risk pregnancies.   [ECF No. 49-1 at 7].   Plaintiffs aver that birth centers are becoming increasingly popular because they are more affordable, offer more relational care, provide a home-like atmosphere, and may better align with personal or religious values. [ECF No. 49-2 ¶ 10].   Despite this, there are currently no such birth centers operating in Iowa.   *Id*. at ¶ 10.

Plaintiffs claim they have developed a business plan, created a five-year financial projection, hired a realtor and architect, collaborated with a local lender to secure capital for the project, and have received a monetary grant to help fund the project.   *Id*. at ¶ 11–12.   They allege that the Council has not approved a CON application for a birth center for over ten years, as

reflected by the fact that there are none operating in the state. *Id*. ¶ 39. Ultimately, they assert that Iowa's CON requirement is an obstacle preventing them from opening the desired facility. However, they do not claim to have applied for, much less been denied, a CON. *Id*. ¶ 40.

### B. Procedural Background

Plaintiffs initially filed their petition in Iowa state court. Defendants then removed the case to this Court on the basis of federal question jurisdiction. [ECF No. 1]. The Court later granted Defendants' motion to dismiss in part, and denied it in part, concluding that rational basis scrutiny would apply to Plaintiffs' equal protection, substantive due process, and state constitutional claims, and that Plaintiffs had stated a plausible claim for relief at that juncture. [ECF No. 44]. The parties have now filed cross motions for summary judgment. [ECF Nos. 49, 51].

### C. Statutory Background

The Court has already provided a thorough explanation of the statutory scheme for Iowa's CON program in its order on Defendants' motion to dismiss. Therefore, it shall briefly summarize the program here. In Iowa, any new institutional health facilities must be issued a Certificate of Need before the project may go forward. A birth center, like the one Plaintiffs wish to open, is defined as "a facility or institution, which is not an ambulatory surgical center or a hospital or in a hospital, in which births are planned to occur following a normal, uncomplicated, low-risk pregnancy." Iowa Code § 10A.711(3). A birth center falls within the scope of the CON framework, meaning a facility would need a certificate. *Id*. § 10A.711(13)(f).

Applicants for a CON must participate in a detailed statutory process before they can be issued a certificate. They must: (1) submit a letter of intent to the Department; (2) wait 30 days before filing a CON application; (3) submit with that application a nonrefundable fee equivalent to three-tenths of 1 percent of the estimated cost of the project, not to exceed $21,000; (4) wait

another 15 days while the Department accepts or rejects the application for completion only; (5) participate in a public hearing where "affected persons" may provide testimony about the proposed institution; (6) and finally await the Council's written decision and findings on the application—determined from an evaluation based on 18 specified criteria in the statute. *Id*. § 10A.713–719. The Council's final decision will be sent to the applicant and all others who request it. *Id*. § 10A.719. Rehearing or judicial review of the Council's decision is available to the applicant and any affected person. *Id*. § 10A.720; Iowa Admin. Code r. 641—202.9.

## II.   DISCUSSION

### A.   Motion for Summary Judgment Standard

Summary judgment is proper when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *Paulino v. Chartis Claims, Inc*., 774 F.3d 1161, 1163 (8th Cir. 2014). "A dispute is genuine if the evidence is such that it could cause a reasonable jury to return a verdict for either party; a fact is material if its resolution affects the outcome of the case." *Amini v. City of Minneapolis*, 643 F.3d 1068, 1074 (8th Cir. 2011) (citing *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 248–52 (1986)).

To preclude the entry of summary judgment, a plaintiff must make a sufficient showing on every essential element of its case for which it has the burden of proof at trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986). The evidence is viewed "in the light most favorable to the nonmoving party," which includes drawing all reasonable inferences in that party's favor. *Pedersen v. Bio-Medical Applications of Minn.*, 775 F.3d 1049, 1053 (quoting *Johnson v. Wells Fargo Bank, N.A.*, 744 F.3d 539, 541 (8th Cir. 2014)). But "[c]redibility determinations, the

weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of the judge." *Anderson*, 477 U.S. at 255.

### B.  Analysis

Plaintiffs claim that Iowa's CON program violates the Fourteenth Amendment's Due Process Clause and Equal Protection Clause.[2]  They also allege that the statutory scheme violates the Inalienable Rights Clause of the Iowa Constitution.  Plaintiffs contend that the CON program is not rationally related to a legitimate government interest and as such is unconstitutional.  They argue they are entitled to judgment as a matter of law and seek an injunction declaring the program unconstitutional as it applies to birth centers.

In contrast, Defendants assert that they are entitled to summary judgment on all of Plaintiffs' claims because the CON requirement is rationally related to legitimate government interests such as improving quality of care, preventing duplication of services, and in protecting full-service hospitals.

### 1.  Rational Basis Standard

Rational basis review bestows "a strong presumption of validity" on the policy choices of the political branches to the extent that judicial intervention "is generally unwarranted no matter how unwisely . . . a political branch has acted."  *FCC v. Beach Commc'ns, Inc.*, 508 U.S. 307, 314–15 (1993) (citation omitted).  Courts will "uphold a state law that does not draw a suspect classification or restrict a fundamental right against an equal protection or substantive due process challenge if it is rationally related to a legitimate state interest."  *Birchansky v. Clabaugh*, 955 F.3d

---

[2] Plaintiffs initially argued that the CON requirement violated their fundamental rights to choose the place and manner of giving birth, to earn a living, and enter into a common occupation. The Court ruled in its motion to dismiss order that these were not fundamental rights and that any distinctions in the program were not based on suspect classifications to trigger strict scrutiny. [ECF No. 44].  Therefore, rational basis applies to all of Plaintiffs' remaining claims.

751, 757 (8th Cir. 2020) (citation omitted).  Such a classification "must be upheld against [an] equal protection challenge if there is any reasonably conceivable state of facts that could provide a rational basis for the classification." *Danker v. City of Council Bluffs, Iowa*, 53 F.4th 420, 423 (8th Cir. 2022) (quoting *Beach Commc'ns,* 508 U.S. at 313).  "A law supported by some rational basis does not offend the constitution merely because it is imperfect, mathematically imprecise, or results in some inequality." *Birchansky,* 955 F.3d at 758.  Additionally, if there is a rational basis for a law that survives an equal protection challenge, that same basis will satisfy the substantive due process analysis. *Exec. Air Taxi Corp. v. City of Bismarck, N.D.*, 518 F.3d 562, 569 (8th Cir. 2008).

### 2.   Substantive Due Process

The Due Process Clause of the Fourteenth Amendment dictates that no state shall "deprive any person of life, liberty, or property, without due process of law."  U.S. Const. amend. XIV, § 1. Substantive due process "protects individual liberty against certain government actions regardless of the fairness of the procedures used to implement them." *Norris v. Engles*, 494 F.3d 634, 637 (8th Cir. 2007) (citation omitted).  Because Plaintiffs allege violation of non-fundamental rights, Iowa's CON program need only be rationally related to a legitimate government interest.  *See Birchansky,* 955 F.3d at 757 (applying rational basis review to Iowa's CON program).  As already noted, rational basis review is a very forgiving standard, a plaintiff bears the burden of overcoming presumptive constitutionality and must refute any possible reason for the law's enactment. *Heller v. Doe ex rel. Doe*, 509 U.S. 312, 320 (1993) (observing that "[a] statute is presumed constitutional . . . and the burden is on the one attacking the legislative arrangement to negative every conceivable basis which might support it.") (cleaned up) (citation omitted).  In fact, there is no requirement under rational basis review that the basis offered be the true motivating reason of the lawmaking

body.  *Beach Commc'ns*, 508 U.S. at 315 ("[B]ecause we never require a legislature to articulate its reasons for enacting a statute, it is entirely irrelevant for constitutional purposes whether the conceived reason for the challenged distinction actually motivated the legislature.").  Simply put, "a legislative choice is not subject to courtroom fact-finding and may be based on rational speculation unsupported by evidence or empirical data."  *Id.*

Plaintiffs assert that none of the legitimate government interests offered by the state are actually related to the Iowa CON program.  Rather, the program is utilized to further an illegitimate government interest—economic protectionism.  Specifically, they argue that Iowa's CON law does not promote public health or safety, but "furthers the anticompetitive propping up of incumbent hospitals at the expense of birth center entrepreneurs like Ms. Hainley."  [ECF No. 49-1 at 17].  They cite to the 2014 denial of a CON to Promise Birth Center as evidence that the law serves to provide market competitors with a "veto".  Specifically, they argue that testimony on behalf of incumbent facilities is dispositive in the CON process due to the Council's potentially arbitrary application of the factors considered and the multiple avenues of appeal for incumbents.

It may be true that hospitals and other incumbent health care facilities benefit from the CON program.  However, that does not preclude the reality that those benefits are a natural consequence of the state using the program to promote legitimate government interests.  Plaintiffs analogize to three cases to support their argument that the law fails rationality review because the purpose of the program is "naked economic protectionism."  Each case is distinguishable.

Plaintiffs point first to *New State Ice Co. v. Liebmann*, a United States Supreme Court case approaching its hundredth birthday.  285 U.S. 262, 271 (1932).[3]  In that case, a private ice company

_____

[3] The Court notes that while the Supreme Court discusses the contours of the government's power to regulate economic activity in relation to the Fourteenth Amendment, *Liebmann* was decided during the bygone *Lochner*-era of constitutional law.  *See Ferguson v. Skrupa*, 372 U.S.

sought an injunction against a competitor under a state statute that required anyone manufacturing, selling, or distributing ice to first obtain a license from the Corporation Commission of Oklahoma. *Id*. The statute dictated that such a license would only be issued if after a hearing, the applicant presented sufficient evidence to establish the necessity for the new ice provider. *Id*. at 271–72. The Commission was entitled to deny the application if the facts proved that existing facilities could satisfy the public need for ice. *Id*.

The Supreme Court specifically distinguished the regulation before them—regulating the ordinary business of ice—from regulations of industries which were paramount to public use and welfare, such as the operation of cotton gins. *Id*. at 276; *but see Nebbia v. New York*, 291 U.S. 502, 513–14 (1934) (rejecting the reasoning in *Liebmann* that only businesses affected with a public interest are within the State's police power). The Court explained that because "the general welfare and prosperity of the state in a very large and real sense depend upon" the maintenance of the cotton industry, the cotton gin business had been "devoted to a public use." *Id*. at 276–77. Therefore, the regulation of such an industry was materially different than that of ordinary business. *See id*. Relating this to the issues before the Court, health care services and facilities are clearly not an ordinary business comparable to ice commerce in 1932. The healthcare industry is undoubtedly vital to the health, safety, and welfare of the public. As such, it is an industry that the state plainly has an interest in regulating. Further, that the regulated industry be dedicated to public use is no longer the standard which applies. The government may pass laws which would

---

726, 729 (1963) (describing "[t]he doctrine that prevailed in *Lochner*" as "discarded"). Just six years later, the Supreme Court established rational basis review for business regulations, and further expounded on the new doctrine in the most famous footnote in constitutional law. *See United States v. Carolene Prod. Co*., 304 U.S. 144, 152 n.4 (1938). As such, *Liebmann* has little to no precedential value in light of the subsequent constitutional revolution in substantive due process doctrine.

burden one's rights under the Fourteenth Amendment so long as they are rationally related to a legitimate government interest.

In *St. Joseph Abbey v. Castille*, the United States Court of Appeals for the Fifth Circuit addressed whether economic protectionism could itself constitute a legitimate government interest. 712 F.3d 215, 221 (5th Cir. 2013).  It concluded that "neither precedent nor broader principles suggest that mere economic protection of a particular industry is a legitimate governmental purpose." *Id*. at 222.  However, it also noted that even when the government is "motivated in part by economic protectionism," a law may still promote a legitimate government purpose to satisfy rational basis. *Id*. at 222–23 (citing *Greater Houston Small Taxicab Co. Owners Ass'n v. City of Houston, Tex*., 660 F.3d 235, 240 (5th Cir. 2011) (holding that even though the city was partially motivated by economic protectionism in a taxi permit distribution scheme, there was "no real dispute that promoting full-service taxi operations" was a legitimate government purpose).  The panel went on to analyze whether a Louisiana state law that restricted the selling of caskets to only funeral homes could survive rational basis review.  The government posited that the law furthered consumer protection by assuring "purchasers of caskets informed counsel" and promoted public health and safety by regulating the field.  *Id*. at 223–24; 226–27.  The panel reasoned that while those would constitute legitimate government interests, the law did not further them because there was no requirement of additional expertise for funeral directors relating to caskets nor any regulation of caskets, how they were made, or how they were used for burials.  *Id*. at 223–26.  The court could find no rational relationship between the law and any legitimate government interest. *Id.* at 227.

In *Bruner v. Zawacki*, Kentucky imposed a certificate of need requirement similar to Iowa, but for new moving companies.  997 F. Supp. 2d 691, 693 (E.D. Ky. 2014).  The statute required

new movers to be "fit, willing and able" to perform their proposed services and show that the "existing transportation service is inadequate." *Id*. Further, it permitted competitors to comment and resist the issuance of a license to an applicant. *Id*. at 694. The government argued that the need requirement was rationally related to their legitimate interest in protecting the public safety and welfare because it protected personal property and reduced administrative costs. *Id*. at 699. Specifically, it asserted that because the process restricted the quantity of moving companies in the market, it decreased the amount of unprofitable moving companies, which would be less likely to take steps to promote safety. *Id*. at 699–700. Again, while these were legitimate government interests, the law was not rationally related to the furtherance of those interests according to the district court. *Id*. The government was merely speculating that the additional hoops new companies were required to jump through prevented unsafe movers from breaking into the market, meanwhile the process did nothing to ensure that currently licensed companies were maintaining safe practices or quality services. *Id*. at 700. The court found there was "no link" between the law and the "alleged government interest in health and safety" and no other conceivable reason for the statute. *Id*. Further "'[n]o sophisticated economic analysis [was] required to see the pretextual nature of the state's proffered explanations' for the regulations." *Id*. at 701 (citation omitted).[4]

This is in stark contrast to Plaintiffs' case where the state offers similar legitimate interests that are actually supported by Iowa's CON requirement for healthcare facilities. By their very nature, health care facilities directly relate to public health and safety in a way that moving

---

[4] This is in part because the government had never granted a certificate of need application for new moving companies when protests were made by competitors. This is distinguishable from the present case because as Defendants note, they have approved five and denied only one CON applications for birth centers in the last 40 years. Two of those approvals were granted despite opposition from competitors. [ECF No. 56 at 7].

companies and casket sales do not. Ensuring public access to health care services, including hospitals and emergency services, is a legitimate government interest. Defendants contend that one of the primary purposes of the CON program is to regulate the health care facility market to protect full-service hospitals, especially in rural areas.[5] They explain that these hospitals provide a wide variety of health care services to all Iowans, including "emergency care, primary care, surgery, laboratory services, imaging, mental health services" and of course maternal care and birthing services. [ECF No. 51-1 at 16].

Even taking the evidence in the light most favorable to Plaintiffs, Defendants have provided a legitimate interest and have demonstrated how the CON program is at least rationally related to that interest—specifically that crucial full-service hospitals would be impacted by the competition of birth centers. Losing patients to new birth centers could impact those health care facilities' abilities to provide other necessary services and impede healthcare access for the public. Regulating competition to protect the viability of full-service healthcare facilities is not the tangential and removed public safety reasoning offered in *Bruner* or *St. Joseph Abbey*. It is a legitimate government interest that is supported by the CON requirement which ensures the need for new birth centers to protect health care facilities already offering birthing services, in addition to other necessary care which a free-standing birth center would not. *See Birchansky*, 955 F.3d at 758.

Plaintiffs fail to adequately address other case law. Most notably, they give only cursory treatment to *Birchansky*, which directly analyzed Iowa's CON framework and established that

---

[5] Defendants also assert legitimate interests in the CON requirement controlling health care costs by preventing the duplication of services and improving the quality of medical services and expertise by discouraging the creation of underutilized facilities. However, the law need only be rationally related to a single legitimate government interest.

"insulating existing entities from new competition in order to promote quality services and protect infrastructural investment can survive rational basis review." 955 F.3d 751, 757 (8th Cir. 2020) (citing *Kansas City Taxi Cab Drivers Ass'n, LLC v. City of Kansas City*, 742 F.3d 807, 809 (8th Cir. 2013)). Rather than engaging with *Birchansky*'s holding that Iowa's CON law "is rationally related to a legitimate state interest in full-service hospital viability," Plaintiffs principally rely on wholly distinguishable cases involving non-healthcare industries like casket sales. *Id.* at 757–58. Similarly, Plaintiffs entirely omit discussion of out-of-Circuit precedent, which specifically addressed CON requirements for medical settings. *See Tiwari v. Friedlander*, 26 F.4th 355 (6th Cir. 2022); *Colon Health Ctrs. of Am., LLC v. Hazel*, 813 F.3d 145 (4th Cir. 2016). In *Tiwari*, the United States Court of Appeals for the Sixth Circuit recognized, "there is a lifetime of difference between the providing of healthcare and the making of caskets." 26 F.4th at 368. Plaintiffs' selective reliance on cases from other contexts, while failing to meaningfully address precedent specifically analyzing healthcare CON frameworks, highlights the shortcomings in their constitutional challenge. This is especially true given that *Birchansky* explicitly upheld aspects of the very same Iowa CON law at issue here, including its capital expenditure exemption as rationally "strik[ing] a balance between protecting full-service hospitals and allowing limited competition." 955 F.3d at 758.

Plaintiffs also point the Court to their expert's report reviewing CON laws. Overall, economist Dr. James Bailey opines that need-review laws fail to further their stated interests. However, he concedes there is no direct empirical evidence regarding CON regulations and their impact on birth center markets which undermines those laws. [ECF No. 49-3 at 37]. Further, none of the evidence in the record forecloses the rationality of the state's purpose in protecting full-service hospitals from the competition of birth centers. Most importantly, "a legislative choice is

not subject to courtroom fact-finding" and need not be supported "by evidence or empirical data." *Beach Commc'ns*, 508 U.S. at 315.  Under rational basis review, a court is not empowered to "sit as a superlegislature to judge the wisdom of legislative policy determinations."  *City of New Orleans v. Dukes*, 427 U.S. 297, 303 (1976).  There is no constitutional basis for a court to allow a plaintiff's hand-selected expert to do so either.

Finally, Plaintiffs attempt to distinguish their case from *Birchansky* by arguing that birth services are not as lucrative as outpatient surgeries.  They assert that the rationality of protecting full-service hospitals from outpatient eye surgery competitors hinged on the profitability of those services.  Stated again, the rational basis standard of review "is not a license for courts to judge the wisdom, fairness, or logic of legislative choices."  *Doe, I v. Peterson*, 43 F.4th 838, 842 (8th Cir. 2024) (citation omitted).  Nevertheless, their argument is unconvincing for two reasons.

First, Plaintiffs stated in their complaint that "service charges at birth centers are generally lower than charges for hospital births in the same area" and one of the purposes of freestanding birth centers is to provide "safer and more affordable" childbirth services.  [ECF No. 1-2 ¶ 33].  In *Birchansky*, the panel explained that "[o]ne of the patients' central complaints about obtaining outpatient surgery from hospitals is high facility fees.  It is rational to theorize that these higher facility fees are necessary to help full-service hospitals cover services they perform at a loss." *Birchansky*, 955 F.3d at 757.  This rationale applies with equal force to Plaintiffs' claims. Regardless of whether birthing services are as gainful as outpatient surgery services, the loss of patients who once sought these services at hospitals will be costly to some extent.  This is a question of degree, not rationality.

Second, at its core, the issue remains the same.  Full-service hospitals are required to provide costly medical services, even to those who cannot pay.  *See id*.  Thus, protecting those

facilities by regulating the market of stand-alone facilities which offer only a fraction of those services is just as legitimate in regard to birth centers as it is for outpatient surgery centers. *See id*. Notwithstanding the potential downfalls of CON requirements generally, the state has articulated a legitimate interest. Plaintiffs have not overcome the program's "strong presumption of validity". *Beach Commc'ns,* 508 U.S. at 314–15. The Court will not frustrate the legislature's choice when it is based upon sound reasoning. *Id*. at 315 (stating that "a legislative choice is not subject to courtroom fact-finding and may be based on rational speculation unsupported by evidence or empirical data.")

### 3. Equal Protection

"The Equal Protection Clause . . . commands that no state shall 'deny to any person within its jurisdiction the equal protection of the laws,' which is essentially a direction that all persons similarly situated should be treated alike." *Stevenson*, 800 F.3d at 970 (quoting *City of Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432, 439 (1985)). However, when no suspect classification is involved, the State need only show that differential treatment is rationally related to a legitimate state interest. *Vacco v. Quill*, 521 U.S. 793, 799 (1997). "Where rationality is the test, a State does not violate the Equal Protection Clause merely because the classifications made by its laws are imperfect." *Kimel v. Fla. Bd. of Regents*, 528 U.S. 62, 84 (2000) (citation omitted).

Plaintiffs contend that Iowa's CON program violates equal protection both in its treatment of birth centers as compared to other "out-of-hospital birth service providers" and in the distinction between new birth centers and established maternity care providers seeking expansion. They argue that neither classification is rationally related to any legitimate government purpose. Specifically, while new facilities such as birth centers are subject to the CON requirement, those providing home birthing services are not. Additionally, hospitals which already provide maternal care and

obstetrical services can expand by spending up to $1.5 million a year without triggering the CON process.

Defendants argue that the differential treatment between these groups under the CON law is rational.  At bottom, they contend that hospitals and home births are inherently different from birth centers in the intensity of their regulation and their maintenance.  Home births by their nature do not take place at any medical facility, but rather at the home of the expecting parents or a third party.  Therefore, they are unregulated in practice.  By contrast, hospitals are heavily regulated, requiring "ongoing oversight" and a "facility-level license" to operate.  As a medical facility which offers healthcare to patients, Iowa has an interest in regulating birth centers.  However, Defendants assert that they do not require such intensive supervision such as a state-issued facility license or continuous oversight.  Iowa's CON requirement is presented as a regulatory middle ground on the spectrum of these services and facilities.  The intrinsic differences in these operations and the amount of regulation they reasonably require is a sufficiently rational basis for their different treatment under the CON program.  A successful challenge to a law reviewed under rational basis must refute "every conceivable basis which might support it."  *Lehnhausen v. Lake Shore Auto Parts Co.,* 410 U.S. 356, 364 (1973).  Plaintiffs have not met this burden.

Additionally, the state must make a determination about how to regulate established maternity care and mobile health providers who seek to expand their facilities.  Setting a $1.5 million dollar expansion threshold is rational in consideration of the government interest in encouraging investment and improvement of services for such facilities which have already been approved for operation and are serving the public.  Equal protection "does not require that a State must choose between attacking every aspect of a problem or not attacking the problem at all." *Dandridge,* 397 U.S. at 486–87.  The state had to draw the line somewhere in determining when

the expansion of existing facilities would necessitate a CON. "The rational basis test only requires a legislature to draw a rational line to achieve the government purposes sought, not a 'perfect line.'" *Holt v. Howard*, 806 F.3d 1129, 1133 (8th Cir. 2015) (quoting *Armour v. City of Indianapolis, Ind.,* 566 U.S. 673, 685 (2012)).

### 4. Iowa Constitution

Plaintiffs also bring corollary claims under the Iowa Constitution asserting violations of due process, equal protection, and their inalienable rights. They point out that the Iowa Constitution acts as "one-way ratchet" which provides greater protections than the United States Constitution. However, simply because the Iowa Constitution cannot provide less protection than the United States Constitution does not mean that it always provides more. Iowa courts apply the same rational basis test for these claims as is applied under the federal constitution. *See Garrison v. New Fashion Pork LLP*, 977 N.W.2d 67, 81 (Iowa 2022); *Planned Parenthood of the Heartland, Inc. v. Reynolds,* 962 N.W.2d 37, 47 (Iowa 2021); *King v. State,* 818 N.W.2d 1, 31 (Iowa 2012). For the same reasons discussed above, Iowa's CON program satisfies rational basis and Plaintiffs' state constitutional claims cannot survive summary judgment.

## III.    CONCLUSION

Plaintiffs' Motion for Summary Judgment is DENIED. [ECF No. 49]. Defendants' Motion for Summary Judgment is GRANTED. [ECF No. 51].

IT IS SO ORDERED.

Dated this 13th day of November, 2024.

_____
STEPHANIE M. ROSE, CHIEF JUDGE
UNITED STATES DISTRICT COURT